IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PHYLLIS JACKSON, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SAMUEL STEVE JACKSON, <br><br> PLAINTIFF, <br><br> VERSUS <br><br> BP EXPLORATION & PRODUCTION INC., and BP AMERICA PRODUCTION COMPANY, <br><br> DEFENDANTS. <br><br> Related to:  12-968 BELO <br> in MDL No. 2179 | * * * * * * * * * * * * * * * * * * * * * * | CIVIL ACTION NO. 24-00878 <br><br><br> JUDGE BARBIER <br><br> MAGISTRATE JUDGE CURRAULT |

**PLAINTIFF'S REPLY TO BP PARTIES' OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER VENUE**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, PHYLLIS JACKSON, individually and as personal representative of THE ESTATE OF SAMUEL STEVE JACKSON ("Plaintiff"), and respectfully submits this Reply to BP Parties' Opposition to Plaintiff's Motion to Transfer Venue ("BP's Motion"). [Rec. Doc. 15].

As set out in Plaintiff's Motion to Transfer Venue [Rec. Doc. 10] and Corrected Memorandum in Support [Rec. Doc. 13], which is hereby adopted and incorporated by reference, the Southern District of Alabama is the proper venue for this BELO lawsuit. The Southern District of Alabama is close in proximity to Plaintiff's residence, is in the same state as multiple important witnesses, and most importantly, is Plaintiff's choice of forum. By contrast, Defendants, BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP" or "BP Defendants"), seek to transfer venue for this case to the Northern

District of Florida over Plaintiff's chosen forum based on largely conclusory grounds. BP is a large and wealthy corporation with significant contacts in almost every state, including Alabama. Plaintiff's proposed venue is not inconvenient for BP, and BP has not proven otherwise. BP has also not proven that its chosen forum is clearly more convenient than Plaintiff's choice, so transfer to the Northern District of Florida would be inappropriate.

## I.   THE PROPER VENUE FOR THIS LAWSUIT IS THE SOUTHERN DISTRICT OF ALABAMA.

The Southern District of Alabama is a proper venue for this lawsuit and is Plaintiff's chosen forum, which should be afforded substantial deference. Plaintiff reiterates that a ***strict*** reading of 28 U.S.C. § 1404(a) should not apply here due to the unusual circumstances of this case including the initial direct-file requirement in the MDL Court pursuant to the Medical Benefits Class Action Settlement Agreement ("MSA").[1] Plaintiff never agreed to give up any rights or forum choice when direct filing in the Eastern District of Louisiana, but BP would have the Court evaluate venue selections by BELO Plaintiffs based on an arbitrary standard that it must only prove that Plaintiff's selected forum is slightly less convenient than its choice of forum. This standard is not only erroneous, but also makes for poor policy because it allows BP to contest venue selection in every BELO case where there is a disagreement on forum selection purely for purposes of gamesmanship rather than "convenience" of witnesses, just as BP does here, even where Plaintiff's chosen forum is a short drive away and BP and its witnesses cannot be said to suffer any real inconvenience.

Plaintiff has established that the Southern District of Alabama is a suitable and proper forum – even when analyzed under § 1404(a) – while BP has failed to demonstrate "good cause" to transfer elsewhere. Plaintiff's choice of forum should not be disturbed absent exceptional

---

[1] Deepwater Horizon *Medical Benefits Class Action Settlement Agreement*, *as Amended on May 1, 2012*, MDL 2179, Rec. Doc. 6427-1 (May 3, 2012), § VIII G(1)(c).

circumstances[2] and rather than meet that standard, BP produced a response to Plaintiff's Motion with red herrings to divert the Court's attention away from the relevant law and facts at issue. This is evidenced by the fact that BP did not apply the factors of § 1404(a) in its Response, and instead argued for a standard whereby Plaintiff carries the burden to prove her choice of forum is substantially *more convenient* than BP's chosen forum, even where BP has no evidence and submits merely conclusory assertions about the convenience of Plaintiffs' own witnesses.

### A. Plaintiff did not agree to be bound to 28 U.S.C. § 1404 for the venue determination in her BELO lawsuit.

BP implies that a strict interpretation of the § 1404(a) transfer factors was agreed upon or negotiated by Plaintiff, but this is untrue.[3] In support of its contention, BP disingenuously stated that "Plaintiff could have elected to opt-out of the MSA but chose not to do so." BP fails to acknowledge that the CMO was not a bargained-for exchange. Plaintiff did not negotiate or receive any benefit from giving up her forum choice. The deadline for claimant to opt-out of the MSA was November 1, 2012.[4] Decedent had not even been diagnosed with any of his conditions yet and BP has refused late opt-out requests. If this was a typical personal injury case and no settlement agreement required Plaintiff to direct-file in the MDL court, the lawsuit could have been filed in Plaintiff's chosen forum, and there would be no question that BP would be under a high burden to show that transfer is appropriate as the movant. This Court's Case Management Order ("CMO")

---

[2] *See Stalnaker v. Amtrak*, CIV.A. 97-3765, 1998 WL 283300 at *1 (E.D. La. May 28, 1998) (quoting *Capstead Mortg. Corp. v. SutterMortg. Corp.*, No. 3:95-CV-2827-G, 1997 WL 135678, at *5 (N.D. Tex. 1997). *See also Gregoire v. Delmar Sys., Inc.,* CIV.A. 05-2812, 2005 WL 3541051, at *2 (E.D. La. Dec. 5, 2005) (quoting *In re Horseshoe Ent.*, 337 F.3d 429, 434-35 (5th Cir. 2003)).

[3] BP's Opp'n to Pl.'s Mot. To Transfer Venue, Rec. Doc. 15 (Aug. 20, 2024).
There is a deadline to opt out of the MSA and BP has refused to allow for late opt-outs. The CMO was entered AFTER the opt-out deadline… notice was inadequate for BELO class members who were *not sick* at the time the MSA was approved. They had no meaningful reason to educate themselves on the terms of the MSA.

[4] *See supra* note 1.

should not override legal precedent,[5] negate the MSA,[6] or imply a *Lexecon* waiver or the waiver of some other rights of BELO Class Members.[7]

BP's accusation that Plaintiff's position "ignores this Court's BELO Cases Initial Proceedings CMO, which expressly incorporates the §1404(a) standard for venue determinations in BELO lawsuits"[8] is misguided. Plaintiff did not "ignore" the CMO. Rather, she contends that a ***strict*** reading of 1404(a) should not apply here due to the direct-file requirement.[9] And to the extent 1404(a) does apply, the burdens should be BP's, not Plaintiff's. Further, the MSA does not contemplate venue based on a 1404(a) analysis conducted under some sort of equally-weighted balancing test as BP seems to imply here by insisting that this case by litigated in Pensacola, Florida rather than Mobile, Alabama because that forum may be slightly more convenient for *some* of Plaintiff's witnesses. Plaintiff did not negotiate her right away to select a forum, provided it was proper, by virtue of being a BELO Class Member. Rather, nothing in the MSA, on its face, was intended to reduce Plaintiff's right to forum selection or foist the burden to prove that Plaintiff's choice of venue was *more* convenient than BP's chosen forum. The language of the MSA is

---

[5] *See* CMO, Rec. Doc. 3 at 6 (venue transfer motions must address "the factors set forth in 28 U.S.C. § 1404(a) and ***applicable case law***"). Applicable case law finds that 1404(a) was not designed to narrow plaintiff's venue privilege and supports a finding here that Defendant has the burden of proving that transfer to a venue other than Plaintiff's chosen forum is clearly the right decision in terms of convenience and fairness. *See Van Dusen v. Barrack*, 376 U.S. 612, 635-36 (1964); *Asevedo v. NBC Universal Media, LLC*, 921 F. Supp. 2d 573, 591 (E.D. La. 2013) (citing *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008).

[6] CMO at 2 ("The settlement agreement is clear that litigation of these claims in the most appropriate venue was a principal intention of the BELO provisions").

[7] A *Lexecon* waiver permits a plaintiff to waive his or her right to have their action remanded under 28 U.S.C. § 1407(a). *See Axline*, 8 F.4th at 671 n.2 (describing and recognizing effect of *Lexecon* waiver). Courts have held that *Lexecon* waivers must be unambiguous. *See In re DePuy Ortho, Inc.,* 870 F.3d at 351 (*Lexecon* waiver must be "clear and unambiguous"); *Armstrong v. LaSalle Bank N.A.,* 552 F.3d 613, 615-19 (7th Cir. 2009) (plaintiffs did not waive their *Lexecon* remand rights through their litigation conduct). *See also Lexecon, Inc.,* 523 U.S. at 36 n.1 (rejecting implicit waiver argument).

[8] *See* BP's Response to Plaintiff's Motion to Change Venue, Rec. Doc. 15 at 2.

[9] *See* Plaintiff's Amended Memorandum in Support of Plaintiff's Motion to Transfer Venue, Rec. Doc. 13, Exhibit A. *See also* Plaintiff's Response in Opposition to BP's Motion to Transfer Case, Rec. Doc. 16.

consistent with Plaintiff's interpretation when it states it was not "intended to preclude a subsequent transfer of venue … to a different United States District Court *consistent with the Federal Rules of Civil Procedure*."[10]

BP interprets the CMO later entered in these BELO cases to mandate venue transfer analysis under a strict but arbitrary reading of § 1404, whereby no one party carries the burden to transfer venue and the fact that Plaintiff was forced to direct file is ignored. Moreover, the cases BP cites in support of its argument are distinguishable. In *Howard v. BP*,[11] every single one of Plaintiff's treating physicians were located in the Defendants' proposed transferee forum. There, the Court said that transfer to the Northern District of Florida would allow for "more expeditious and inexpensive disposition" of the matter than if the case remained in the Eastern District of Louisiana.[12] However, Defendants have conveniently glossed over an important practical difference between *Howard* and the present case which has a material impact on the reasonableness behind a transfer to the Southern District of Alabama.

In *Howard,* Defendants substantially based their argument that the Northern District of Florida was the better venue over the Eastern District of Louisiana on the fact that plaintiff and his physicians resided in the Northern District of Florida.[13] In *Howard*, absent transfer, plaintiff and other witnesses located in the Northern District would have been required to travel approximately 250-292 miles, or about four to five hours by car.[14] But here, the distance from plaintiff's residence

---

[10] *See* Deepwater Horizon *Medical Benefits Class Action Settlement Agreement, as Amended on May 1, 2012*, MDL 2179, Rec. Doc. 6427-1 at 64 (May 3, 2012) (emphasis added).
[11] *Howard v. BP Expl. & Prod., Inc.,* No. 20-3375, Rec. Doc. 9 at 2 (E.D. La. May 6, 2021).
[12] *Id.* at 4.
[13] *See* Defs' Mem. in Supp. of BP Parties' Opp'n to Pl.'s Mot. to Transfer Venue at p. 5 (Rec. Doc. 15) (citing *Howard,* No. 20-3375, Rec. Doc. 9 at 3-4.
[14] This data estimate was calculated using Google Maps by inputting plaintiff's residential address as the starting point (386 Evergreen Cir, Destin, FL 32541), and the address of the courthouse for the Eastern District of Louisiana (500 Poydras St, New Orleans, LA, 70130). The fastest route by car was via I-10, a

in Milton, Florida to the district courthouse in Mobile, Alabama, is about an hour away by car, a full three to four hours less than the travel time to the forum which plaintiff sought transfer to in *Howard*. To split hairs over a thirty-minute difference in travel time is objectively unreasonable and does not defeat the strong presumption in favor of Plaintiff's choice of forum.

Next, the defendants cited *Hahner* but failed to address the material contextual distinctions which *Hahner* presents. In *Hahner v. BP*,[15] BP filed a Motion to Transfer Venue and the plaintiff filed an untimely Response in which he argued the case should remain in the Eastern District of Louisiana, rather than being transferred to the Southern District of Florida, because his exposure occurred in Louisiana (which BP was unable to verify). However, the plaintiff only identified witnesses in BP's proposed transferee venue and the identified witnesses were located "over 750 miles away" from Plaintiff's proposed venue.[16] The plaintiff also did not raise the legal argument we raise here, related to the burdens of the party moving for transfer and whether a traditional 1404(a) analysis should apply in the case of a direct-filed case arising out of a Multi-District Litigation. In contrast, Plaintiff's proposed venue here is located less than an hour's drive away from BP's proposed venue (and even closer to many of Plaintiff's treating physician witnesses), and Plaintiff has identified witnesses in the state of the proposed forum. BP's expert witnesses generally live closer to Alabama than Florida, as do Plaintiff's. Additionally, Plaintiff timely participated in all venue transfer-related motion practice and provided the Court with detailed legal analysis which raises issues of first impression for the Court.[17] Finally, in *Eldridge v. BP*,[18] the

---

distance of 256 miles with a travel time of four hours and ten minutes by car. The next fastest route was via I-65 and I-10, a distance of 292 miles with a travel time of five hours and five minutes by car.

[15] *See Hahner v. BP Expl. & Prod., Inc.,* No. 21-180, Rec. Doc. 10 at 1 (E.D. La. June 16, 2021).
[16] *Id.*
[17] Rec. Doc. 16.
[18] *See* Def's Mem. in Supp. of BP Parties' Opp'n to Pl.'s Mot. to Transfer Venue, Rec. Doc. 15 at 5 (citing *Eldridge v. BP Expl. & Prod., Inc.*, No. 18-8326, 2019 WL 206823 (E.D. La. Jan. 23, 2019)).

plaintiff wholly failed to file an opposition memorandum. Because the venue transfer was not contested in *Eldridge*, that case is inapposite.

### B. Plaintiff adequately analyzed the facts of this case under § 1404 and shown that the Southern District of Alabama is the appropriate venue.

BP does not disagree that venue is be proper in the Southern District of Alabama under 28 U.S.C. § 1391(b)(1). Rather, BP contends that "Plaintiff's argument fails to address the question of where the most convenient venue would be" under 1404.[19] This is patently false. Plaintiff supported her Motion for Transfer with ample case authority to support transfer to the Southern District of Alabama.[20] Further, Plaintiff provided a detailed analysis under the Fifth Circuit's 1404 factors in her Opposition to BP's Motion to Transfer which showed *why* the factors weigh in favor of transfer to the Southern District of Alabama rather than the Northern District of Florida.[21]

BP's statement that "[o]f Decedent's 124 badged workdays, only **one day** was in the Southern District of Alabama" is a red herring.[22] The mere fact that Decedent's badging data shows that Decedent badged in (and out) of a Florida location does not inherently mean that the Decedent worked exclusively at said location (*i.e.*, Florida) throughout the entire workday. Nor does this fact raised by BP independently bear on the need for transfer to a forum other than Plaintiff's selected forum. Decedent could have easily been sent to work in Alabama, as it was less than 15 miles from the Decedent's Florida check-in location. Notably, BP does not claim that the witnesses who collected or would be expected to testify about Plaintiff's "badging" data would be unavailable or inconvenienced by testifying in Alabama. In fact, BP hired many out of state contractors to work the oil spill response. The badging data itself is in electronic form, and the physical location of this

---

[19] Rec. Doc. 15 at 3.
[20] Rec. Doc. 13, Exhibit A.
[21] Rec. Doc. 16.
[22] Rec. Doc. 15 at 3.

potential evidence is likewise not a factor.

Additionally, BP failed to admit that Plaintiff's chosen forum is more convenient for known important witnesses, and BP's own witnesses, than BP's chosen forum. None of the experts that BP generally relies on in these BELO cases are based in Florida. Some of the most important witnesses in this case – the consultants and contractors who gathered or interpreted Decedent's badge activity – are employed with CTEH and Total Safety. Notably, neither CTEH nor Total Safety has any offices or employees in Florida. CTEH is headquartered in Little Rock, Arkansas and also has offices located in Golden, Colorado; Houston, Texas; Jackson, Mississippi; and New Orleans, Louisiana.[23] Total Safety is headquartered in Houston, Texas, and has locations around the United States, including an office in Mobile, Alabama, but none in Florida.[24] All of CTEH's locations and BP's retained experts are closer in distance to Plaintiff's chosen forum.[25] Additionally, BP has not explained how the Southern District of Alabama will be inconvenient for any of its witnesses in comparison to the Northern District of Florida.

BP falsely claimed that Plaintiff's chosen forum is not as convenient for Plaintiff's own witnesses, based solely on the location of some of Plaintiff's treating physicians.[26] Plaintiff and her children, who are material fact witnesses in this case, intend to appear in the Southern District of Alabama at trial. BP has not shown that any of Plaintiff's necessary treating physicians would

---

[23] *Locations*, CTEH, https://cteh.com/locations/ (last visited Aug. 26, 2024).

[24] *Find a Total Safety Location*, TOTAL SAFETY, https://www.totalsafety.com/locations/ (last visited Aug. 26, 2024).

[25] Dr. Robert Cox, M.D., BP's retained toxicologist, resides in Mississippi. *See Robert D. Cox, M.D.,* Univ. of Miss. Med. Ctr., https://umc.edu/FacultyProfile/Cox_Robert_D/ (last visited Aug. 26, 2024). Dr. Damian She, BP's retained environmental toxicologist, resides in North Carolina. *See Dr. Damian Shea, PhD,* Expert Inst., https://www.expertinstitute.com/experts/dr-damian-shea-109446/ (last visited Aug. 26, 2024). Dr. Dominik Alexander, BP's retained epidemiologist resides in California. *See Dr. Dominik Alexander, PhD, MSPH,* Expert Inst., https://www.expertinstitute.com/experts/dr-dominik-dane-alexander-151753/ (last visited Aug. 26, 2024).

[26] Note, not all of Plaintiff's treating physicians are located in Northern Florida. Some are located in Alabama, and another now lives in Orlando (MDFL), so many of them must travel either way.

not attend a trial in the Southern District of Alabama, and such attendance will not be drastically more inconvenient than attending a trial in the Northern District of Florida.

Further, Plaintiff's selected forum would be more convenient for the physicians located in Northern Alabama and for Plaintiff's other important experts. Plaintiff has retained experts who are willing to travel to the Southern District of Alabama, and travel to Alabama is shorter in distance for them than travel to Florida, and presumably less costly. Those witnesses are more important than Plaintiff's non-retained medical doctors because the fact of Plaintiff's medical diagnosis and authenticity of medical records is not expected to be contested at trial, but rather legal causation is expected to be in dispute. BP's contentions about convenience for Plaintiff's own witnesses are unfounded as they have presented no proof that Plaintiff's experts or necessary witnesses would refuse to go to the Southern District of Alabama for trial or would be significantly more inconvenienced by attending trial in Pensacola as opposed to Mobile, Alabama.

BP claims that Plaintiff's Motion to Transfer Venue should be denied because "she has not identified any material contact with that District."[27] BP appears to have invented this standard and cited no case law in support of such. Plaintiff provided a thorough analysis to show the factors weigh in favor of transfer to the Southern District of Alabama. As the movant with the high burden, BP was expected to demonstrate how the factors weigh in favor of their chosen forum but failed to do so. Moreover, this case should be treated as if it was already located in the Southern District of Alabama, and BP, as the movant for transfer to a venue other than Plaintiff's chosen forum, has a heavy burden. BP has not shown why it *does not* carry the burden and why Plaintiff *does*.

When the distance between an existing and proposed venue is more than 100 miles, the potential inconvenience to witnesses is evaluated.[28] Here, the existing venue selected by Plaintiff,

---

[27] Rec. Doc. 15 at 5.
[28] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008).

theoretically the Southern District of Alabama, and BP's strategically proposed venue, the Northern District of Florida, are about 57 miles apart, so convenience between the two is moot.

### C. The Southern District of Alabama is convenient for the critical and indispensable witnesses in this case.

BP notes that Decedent's medical diagnosis and alleged physical condition will be "critical issues for the trier of fact."[29] Plaintiff was diagnosed with various forms of blood cancer and, as BP is aware, there is objective evidence of the medical diagnoses. Plaintiff anticipates retaining medical experts to testify to the fact of diagnosis as well as legal causation. Witnesses for significant issues that BP failed to mention, such as exposure and causation, are located closer to the Southern District of Alabama than the Northern District of Florida as explained above. Plaintiff's chosen forum is more convenient than Defendants' chosen forum for most important witnesses in this case. Further, BP's statement that *all* of "the significant witnesses to this BELO lawsuit … are located in the Northern District of Florida" is not accurate. BP omitted numerous important witnesses in their convenience analysis, relied on bald assertions regarding the purported convenience of Plaintiff's witnesses, and relied on a fabricated rule that "location of witnesses and evidence is the most important factor in the venue analysis" without citing any supportive cases.

## II.  CONCLUSION

BP failed to show that the Northern District of Florida is clearly more convenient. BP also failed to show that the Southern District of Alabama is improper or clearly inconvenient. However, Plaintiff met her burden by demonstrating that the Southern District of Alabama is more, or just as convenient, and is anticipated to provide Plaintiff with just resolution of this dispute. The Southern District of Alabama is a proper forum, is Plaintiff's choice of forum, and therefore should carry significant weight. Therefore, this case should be transferred there.

---

[29] Rec. Doc. 15 at 5.

                                                    Respectfully submitted,

                                                    **THE DOWNS LAW GROUP, P.A.**
                                                    3250 Mary Street Ste 307
                                                    Coconut Grove, FL 33133
                                                    Telephone: (305) 444-8226
                                                    Facsimile: (305) 444-6773

                                                    */s/ C. David Durkee*
                                                    **C. DAVID DURKEE, ESQ.**
                                                    Florida Bar No.: 998435
                                                    Email: ddurkee@downslawgroup.com
                                                    **JORDAN H. MAUN, ESQ.**
                                                    Florida Bar No.: 1054323
                                                    Email: jmaun@downslawgroup.com

                                                   *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 26, 2024, the foregoing pleading was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

Dated this 26th day of August 2024.

                                                      */s/ C. David Durkee*
                                                      C. David Durkee, Esq.