UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PHYLLIS JACKSON, Individually and as personal representative of the Estate of SAMUEL STEVE JACKSON | * | CIVIL ACTION |
| | * | NO. 24-878 |
| VERSUS | * | SECTION "J" (2) |
| BP AMERICA PRODUCTION COMPANY, ET AL. | * | |

**ORDER AND REASONS**

Pending before me in this BELO proceeding are competing Motions to Transfer Venue,[1] with Plaintiff requesting a transfer to the Southern District of Alabama and Defendants requesting a Transfer to the Northern District of Florida. ECF Nos. 9, 10. The parties filed Opposition and Reply Memoranda. ECF Nos. 15, 16, 17, 18. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, the Court DENIES Plaintiff's Motion, GRANTS Defendants' Motion, and TRANSFERS the case to the Northern District of Florida for the reasons stated herein.

**I.     BACKGROUND**

Plaintiff Phyllis Jackson, individually on and behalf of the Estate of Samuel Steve Jackson, filed this Back-End Litigation Option suit ("BELO") for Later Manifested Physical Conditions ("LMPC") in accordance with the *Deepwater Horizon* Medical Settlement Agreement (the "MSA") alleging that decedent's exposure to chemicals while performing clean-up work from May 2010 until February 2011, caused injuries that ultimately lead to his death. ECF No. 1 ¶¶ 1-4, 27-30. The BELO lawsuit process is the exclusive remedy for class members who did not opt

---

[1] A magistrate judge is authorized to transfer a case to another district. *See Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998).

1

out of the settlement and who seek compensation for LMPC, as defined in the *Deepwater Horizon* MSA.  *See* 10-md-2179, ECF No. 6427-1, at § II(VV).

The Court's Initial Proceedings Case Management Order ("CMO") directs the parties to file a joint statement advising the Court whether they have stipulated to venue and, if no agreement has been reached, to file motions for transfer of venue.  ECF No. 3, ¶ III.  CMO ¶ III(2) specifies that "the factors set forth in 28 U.S.C. § 1404(a) and applicable case law" govern the determination of the appropriate venue for discovery and dispositive proceedings.  ECF No. 3, at 6.

Plaintiff's Complaint states:

> The Northern District of Florida is the most appropriate venue. Decedent died in Milton, Florida. Decedent worked during his clean-up operations for the Oil Spill partly in the Northern District of Florida. . . . Plaintiff's current place of residence is in Milton Florida. Moreover, a majority of the witnesses and other relevant sources of proof, such as Decedent's doctors, are also located in the Northern District of Florida. Considering the relative ease of access to sources of proof, the ability to secure attendance of witnesses, and the ability to minimize costs of witnesses, the appropriate venue for this cause of action is the Northern District of Florida.

*Id.* ¶ 12, at 2-3.  Defendants agreed that venue in the Northern District of Florida would be proper. ECF No. 4, ¶ 12.  Later, however, Plaintiff determined that significant contacts with the Southern District of Alabama makes that venue proper and thus requested transfer to that district rather than to the Northern District of Florida.  ECF No. 10-2 at 2.

## II.   THE CROSS MOTIONS

### A.  Plaintiff's Arguments

Plaintiff argues that the Southern District of Alabama is proper venue under 28 U.S.C. § 1391 and there is no *Lexecon* waiver.  ECF No. 10-2 at 3.  She contends that decedent was exposed to substances while working in Mobile and Gulf Shores, Alabama, and thus, a substantial part of the events giving rise to the claim occurred in the Southern District of Alabama.  *Id.* at 3-4.  Plaintiff argues that a traditional § 1404(a) analysis should not apply to this direct-filed BELO

2

suit because § 1404(a) was not designed to displace a Plaintiff's choice of forum and only the JPML, not the court, has the authority to transfer a case out of an MDL court. *Id.* at 4.

If the court were to undertake the § 1404(a) analysis, Plaintiff argues the burden should be on Defendants to establish that Plaintiff's chosen forum is improper. *Id.* at 4, 5. Plaintiff argues the Southern District of Alabama is the most appropriate venue because: (i) that is where decedent worked; (ii) convenience of the witnesses as many of Plaintiff's identified witnesses, including decedent's medical specialists, are located there, and (iii) the BP Defendants have not identified any prejudice from this case being transferred to the Southern District of Alabama. *Id.* at 5, 7-9. While Plaintiff concedes decedent was initially treated in Northern Florida, she states that his hematology and oncology specialists are at University of Alabama at Birmingham's Kirklin Clinic, which she initially asserted was located in the Southern District of Alabama, but later revised that statement to simply state located in "Alabama," as Birmingham falls within the Northern, not Southern, District of Alabama. *Compare* ECF No. 10-2, at 5, 8 *with* ECF No. 13-2, at 6, 9.

In Opposition to Defendants' motion, Plaintiff argues that she has "identified multiple treating physicians and specialists located in Alabama" and because the exposure occurred in the Southern District of Alabama, requiring witnesses to travel from the Northern District of Florida to the Southern District of Alabama would promote "justness and fairness." ECF No. 16 at 3. Plaintiff then repeats the arguments raised in support of her motion to transfer regarding direct filed MDL cases, deference to Plaintiff's choice of forum, and § 1404(a). *Id.* at 4-7, 9-18. She accuses BP of forum shopping gamesmanship and argues that the location of medical witnesses should not direct the transfer analysis. *Id.* at 7-9.

In Reply, Plaintiff reiterates the prior arguments, again asserts that the Southern District of Alabama is a proper venue and should be given deference as Plaintiff's chosen venue, and seeks to distinguish the cases cited by Defendants. ECF No. 18.

**B. Defendants' Arguments**

BP argues that the Northern District of Florida is the proper venue because decedent resided there prior to his death, Plaintiff resides there, the majority of decedent's medical providers are located there, and all of Plaintiff's non-medical witnesses are located there. ECF No. 9-1 at 1, 3. BP argues that Plaintiff's initial disclosures and accompanying medical records confirm that the Northern District of Florida has the most significant contacts with as thus is the appropriate venue. *Id.* 2-3. It argues that decedent's limited work in the Southern District of Alabama does not justify venue there, particularly given that Plaintiff has not identified any witness located there. *Id*. at 1, 3. Specifically, two of the three diagnosing medical providers are located in Pensacola, Florida, with the third doctor located in Birmingham, Alabama which is in the Northern (not Southern) District of Alabama, the majority of other medical providers are located in the Northern District of Florida including those with The Kirklin Clinic of UAB Hospital who are based at its Pensacola location. *Id.* at 3, 5. BP argues that the relevant § 1404(a) factors counsels in favor of transferring the case to the Northern District of Florida, and that decedent's limited work in the Southern District of Alabama does not justify suit there because he also worked in the Northern District of Florida. *Id.* at 4-8.

In Opposition to Plaintiff's Motion, BP argues that Plaintiff ignores the CMO's express incorporation of § 1404(a) for venue determination when arguing that the Court should look to § 1391. ECF No. 15 at 2. BP then reiterates the arguments raised in support of its motion to transfer regarding Plaintiff's lack of meaningful contacts with the Southern District of Alabama

4

and failure to identify any witness within that district. *Id.* at 3-6. Moreover, BP argues that Plaintiff's assertion that decedent performed significant work in Alabama is inconsistent with decedent's own sworn statement that his work was in the Northern District of Florida and BP's business records reflecting that, of his 124 days worked, only 1 day was in the Southern District of Alabama while the remaining 123 day were in the Northern District of Florida. *Id.* at 3-4 (citing ECF No. 15-1, 15-2).

Defendants' Reply Memorandum repeats the earlier arguments regarding Plaintiff's and decedent's connections to the Northern District of Florida, the more extensive work history in that district, the location of witnesses and the fact that no witness is located in Plaintiff's now preferred venue. ECF No. 17.

### III. APPLICABLE LAW AND ANALYSIS

Paragraph III(2) of this court's BELO Cases Initial Proceedings Case Management Order provides that "the factors set forth in 28 U.S.C. § 1404(a) and applicable case law" govern the determination of the appropriate venue for discovery and dispositive proceedings. ECF No. 3, at 6. Section 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

#### A. Both Proposed Venues Would Be Proper

Initially, Plaintiff's reliance of § 1391 is misplaced as the issue presented here is not whether venue is proper under § 1391. The parties concede that venue would be proper in either the Northern District of Florida or Southern District of Alabama under § 1391. The issue is which venue (SDAL or NDFL) is the most convenient when, in accordance with the CMO's requirements, the § 1404(a) factors are considered.

5

Likewise, Plaintiff's *Lexecon* reference is inapposite.  Section 1407(a) of Title 28 provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

Thus, under § 1407, the MDL court addresses all pretrial proceedings, but it cannot try a case that it could not otherwise try without its MDL status.  Once pretrial proceedings are completed, the MDL must remand the transferred case to the district from which it was transferred.  An MDL court can only try a case where venue is improper in the MDL court's district when the parties waive their objections.[2]  This waiver is known as a "Lexecon waiver."[3]

MDL courts often issue direct-filing orders so that a complaint may be filed directly in the MDL district, and thus, there is no court to which to remand.  The Fifth Circuit instructs that cases filed directly filed in an MDL court are treated "as if they were transferred from a judicial district sitting in the state where the case originated."[4]  To determine where "the case originated" in a direct filed case, the court looks to where the individual complaint was or would have been brought.[5]  Had Plaintiff not direct filed in this MDL court, in light of ¶ 12 of her Complaint (stating

---

[2] *In re Depuy Orthopaedics, Inc*., 870 F.3d 345, 348 (5th Cir. 2017).
[3] *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 37 (1998) (holding that § 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course.").
[4] *Depuy Orthopaedics*, 870 F.3d at 348 (citations omitted).
[5] *Looper v. Cook Inc*., 20 F.4th 387, 393 (7th Cir. 2021) (citing *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 999 F.3d 534, 538 (8th Cir. 2021) ("Because claims in MDL cases often wind up in the MDL forum through an 'accident of bureaucratic convenience,' this court and others have concluded in many instances that the substantive law of the forum the individual complaint was or would have been brought in should govern, rather than the law of the MDL forum." (citation omitted)); *Depuy Orthopaedics*, 870 F.3d at 348 ("Cases that are directly filed in an MDL court are treated 'as if they were transferred from a judicial district sitting in the state where the case

"[t]he Northern District of Florida is the most appropriate venue"), the case would have been filed in the Northern District of Florida. For that reason, Plaintiff's argument suggesting deference to her current preference for the Southern District of Alabama falls flat. While the Southern District of Alabama became Plaintiff's preferred venue last month, when she filed suit in April, she asserted that the "most appropriate" venue was the Northern District of Florida.

Further, MDL orders, like that in this case, typically include explicit direction that, where the parties do not agree about appropriate venue for resolution of the case at the conclusion of the MDL court's handling of pretrial proceedings, the court will make the determination under § 1404(a) standards.[6] No one is suggesting that trial should proceed in this MDL court. Thus, there is no *Lexecon* waiver issue implicated by these competing transfer motions. Both parties concede that venue would be proper in either the Southern District of Alabama or Northern District of Florida. The parties simply disagree, however, as to which of those two venues is the most convenient venue for purposes of § 1404(a).

B.      **Section 1404(a) Considerations**

The factors relevant to the § 1404(a) venue determination include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[7] Relevant public interest factors include

---

originated.'") (quoting In re *Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 09-md-2100, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011)); *Timothy v. Boston Scientific Corp.*, 665 F. App'x 295, 296 (4th Cir. 2016) (per curiam) (in direct-filed case, the originating jurisdiction's "choice of law principles controll[ed] because the actions forming the basis of the lawsuit occurred there"))).

[6] *See, e.g., In re Takata Airbag Prod. Liab. Litig.*, 379 F. Supp. 3d 1333, 1345 (S.D. Fla. 2019) (citing *In re Incretin Mimetics Prods. Liab. Litig.*, MDL No. 13-2452, 2013 WL 12171761, at *1 & n.1 (S.D. Cal. Nov. 13, 2013)) ("Without a stipulation by the parties as to where these legal actions should be transferred, the Court will transfer them to a federal district court of proper venue as defined by 28 U.S.C. § 1391, pursuant to the Rules of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1404(a)" (internal quotation marks omitted)).

[7] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quotation omitted).

"(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the governing law; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."[8]

Plaintiff's complaint alleges that she resides in Milton, Florida. ECF No. 1 at ¶ 1, 12. Milton is in Santa Rosa county, which is in the Northern District of Florida. 28 U.S.C. § 89(c). Likewise, decedent's disclosures reflect that he resided in Pensacola, Florida, at the time of his alleged exposure and Pace, Florida immediately preceding his death. *Id.* ¶ 12; ECF No. 9-3 at 3. Both Pace and Pensacola are within the Northern District of Florida. Most of decedent's medical providers are located in the Northern District of Florida. ECF No. 1 ¶ 12; ECF No. 9-3 at 9-10; 9-4 at 2-3. Plaintiff's medical providers' location is particularly significant in this analysis.[9] Plaintiff contends that one provider is located in the Northern (not Southern) District of Alabama while Defendants contend that provider is located in the Northern District of Florida. The fact witnesses are also located in the Northern District of Florida. ECF No. 9-3 at 7; No. 9-4 at 2-3.

Plaintiff now contends, contrary to Complaint, that the Southern District of Alabama is the most convenient forum. But Plaintiff's original chosen forum at the time of the suit filing was identified as the Northern District of Florida, not the Southern District of Alabama. And while Plaintiff argues that some of decedent's treating physicians are in "Alabama," Plaintiff fails to identify a single witness located in the Southern District of Alabama. Rather, the one Alabama witness identified appears to be located in the Northern District of Alabama, not Southern District.

---

[8] *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2008)).
[9] *See, e.g.*, *Eldridge v. BP Expl. & Prod., Inc.*, No. 18-8326, 2019 WL 296823 (E.D. La. Jan. 23, 2019) (transferring case to the Northern District of Mississippi); *Hernandez v. BP Expl. & Prod., Inc.*, No. 18-6848, 2018 WL 6335775 (E.D. La. Dec. 5, 2018) (transferring case to Southern District of Texas); *Odom v. BP Expl. & Prod., Inc.*, No. 16-15974, 2017 WL 11221334 (E.D. La. Mar. 15, 2017) (transferring case to Western District of Texas); *Worley v. BP Expl. & Prod., Inc.*, No. 16-3620, 2016 WL 4704116 (E.D. La. Sept. 7, 2016) (transferring case to Middle District of Louisiana); *Townsend v. British Petroleum*, No. 15-5033, 2016 WL 687658 (E.D. La. Feb. 19, 2016) (transferring case to Northern District of Alabama, Middle Division).

Moreover, the other witnesses are located in the Northern District of Florida. Thus, the Northern District of Florida allows for more expeditious and inexpensive disposition of the instant matter. Further, Plaintiff is not prejudiced by having to pursue this case in her home district, with its courthouse much nearer and where any inconvenience to decedent's doctors, if they should need to present evidence, is minimized.

Considering the relevant factors and Plaintiff's disclosure information (ECF No. 9-3), pursuant to § 1404(a), for the convenience of the parties and witnesses, venue for this BELO lawsuit should be transferred to the Northern District of Florida. Though decedent may have experienced limited exposure while in the Southern District of Alabama, Plaintiff has not identified any witness located in that venue. Thus, comparing the two proposed venues, the Northern District of Florida provides greater ease of access to documentary proof and more readily allows for availability of compulsory process to secure identified witnesses at a less expensive cost of attendance than elsewhere would be incurred for those witnesses.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion to Transfer to the Southern District of Alabama is DENIED and Defendant's Motion to Transfer to the Northern District of Florida is GRANTED;

IT IS FURTHER ORDERED that the case be TRANSFERRED to the Northern District of Florida.

New Orleans, Louisiana, this 28th day of August, 2024.

DONNA PHILIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE